## LINGO LUMBER CO. v. HARRIS.
### (No. 7281.)

Court of Civil Appeals of Texas. Austin.
Nov. 21, 1928.

Rehearing Denied Dec. 12, 1928.

John C. Read and R. J. Dixon, both of Dallas, for plaintiff in error.

Crate Dalton and Clark & Clark, all of Dallas, for defendant in error.

•BAUGH, J. C. A. Harris sued the Lingo Lumber Company, a corporation, alleging conversion of lots 3 and 4, in block 4 of Elks Hill addition to the city of Dallas, legal title to which lots said lumber company held in trust for Harris. Judgment was rendered in favor of Harris upon special issues answered by the jury, from which the lumber company has prosecuted this writ of error.

The purchase price of the lots was $1,700 each. Harris paid $500 on each lot, and the lumber company paid $1,200 on each. The lots were conveyed to the lumber company. A house was constructed on each lot under an agreement alleged by Harris, plaintiff below, as follows: "That said Company (Lingo Lumber Co.) would furnish all labor and material of every kind and character for said buildings and employ plaintiff to supervise construction for the total sum of $3200.00 each and agreed to hold the said lots in trust until the construction work was done, pay off a first lien of $1200.00 on said lots, convey said property to plaintiff and let plaintiff execute his notes to the company secured by a first lien upon said two pieces of property in the total amount of $4400.00 against each. It was agreed at that time that plaintiff should have all above $4400.00, which each of said houses brought to repay plaintiff's $500.00 cash payment made on each lot and for his contractor's profit." He further alleged that the houses were completed on or about April 25, 1926; that by deed dated April 26, 1926, said lumber company sold lot No. 3 to a Mrs. Nickelson for $6,650, payable as follows: $400 cash, and the execution by her of a first lien note for $4,000 and a second lien note for $2,250, both payable to the lumber company; that it sold and conveyed lot 4 on April 30, 1926, to O. E. St. Clair for $6,700, payable as follows: $1,450 cash, and the execution by St. Clair of a first lien note for $4,000, payable to a Mrs. Rand, and a second lien note for $1,250, payable to the lumber company; that said conveyances were in fraud of the trust agreement with said plaintiff, in breach thereof, and a conversion of the property. Plaintiff further alleged in paragraph IV of his petition: "That by reason of the wrongful and unlawful taking and converting of said property by defendant, as aforesaid, plaintiff has sustained damages in the sum of $4550.00, which said sum of $4550.00 is the reasonable difference in the market value of the said two pieces of property on the date of the conversion and sale by the defendant and the amount which plaintiff owed the defendant for the material and lumber supplied by the defendant company in the construction of the said property."

In response to special issues submitted to them the jury answered: (1) That said lumber company was to build said houses, paying for all labor and material on a flat rate of $3,200 per house; (2) that it was agreed by the lumber company to construct the houses and take notes for the total sum of $4,400 against each lot and finance the transaction

"as alleged in plaintiff's petition"; and (3) that the reasonable cash market value of each lot on the date of its sale was $5,500. The court rendered judgment in Harris' favor for $2,200, the difference between the $4,400 contracted for and the market value of the houses when sold.

The only issue in the case over which there was any serious controversy was whether the lumber company agreed to a flat price of $3,200 each for the construction of the houses in question, and there is no complaint made here of the jury's finding on that issue. The record discloses errors, however, requiring a reversal of the case. The lumber company at all times admitted that it held the property in trust subject to payment to it by Harris of whatever amount he owed it; he insisting that his debt to said company was $4,400 on each house, and the company insisting that it was considerably more than that. It is obvious from the record that Harris sought recovery solely on the theory of a conversion by the lumber company of the realty, not of the proceeds derived from its sale. He pleaded expressly that said company sold said property in violation of the trust, and in violation of its agreement to reconvey the lots to him upon completion of said houses and take his notes for $4,400 against each of them.

The testimony of Harris himself not only does not show a conversion of the property by the lumber company, but negatives conversion thereof by it. He testified: "Mr. Mumpower (who was manager for the Lumber Company) said that he would handle it for me, pay the $1200.00 due on the lots, and would, when finished—when they were finished I would owe $4400.00 on each house, and they would be fixed in notes in case he didn't sell them or I didn't sell them before the notes were to be made."

Harris, himself, made the sale of lot 4 to St. Clair, inspected certain property accepted in part payment therefor, and agreed to its value. With reference to this sale he testified: "I just told them I wanted my money out of the property. I made the sale and I tried to get them to pay me my money. He said he was not ready but that as soon as he could he would adjust it. I told St. Clair I would make no claim on the property at all, that I was willing to have the trade made and it was all satisfactory to me. The Lumber Company never gave to me any of the proceeds of that sale. * * * I was present when they agreed on the matter and was satisfied with it." And again: "The two houses were to cost me $4400.00 apiece. This was to be paid in notes—made in notes back against the property. The property, those premises were sold before I got them finished up. I agreed for them to make the first lien notes and go ahead and sell the property to those people."

It is manifest then that, in the sale to St. Clair, the most that the lumber company could have been guilty of was the failure to account to, or pay over to, Harris the proceeds of the sale after deducting therefrom the amount of Harris' debt to it. But Harris did not sue for any such accounting, nor for conversion of any such proceeds, but for conversion by the lumber company of the property itself. He does insist that the lumber company breached its trust by taking only a $4,000 first lien against the lot instead of $4,400 as agreed, but, having assisted in making the sale and having fully agreed to it, he was bound by its terms.

■■ To constitute a "conversion" of property there must be some repudiation of the owner's right, or an exercise of a dominion over it wrongfully, in denial of, or inconsistent with, the owner's right. Gulf, C. & S. F. R. Co. v. Buckholts State Bank (Tex. Com. App.) 270 S. W. 1008; Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, 40 S. W. 391; Home Investment Co. v. Strange (Tex. Civ. App.) 152 S. W. 510; Sullivan & Co. v. Ramsey (Tex. Civ. App.) 155 S. W. 580. Clearly no conversion of lot 4 was shown.

■ The evidence was not so conclusive as to the sale of lot 3 to Mrs. Nickelson, Harris having testified that he protested that sale. His protest seems to have been rather against the terms of the sale than against any right or authority delegated by him to the lumber company to make such sale and conveyance. The entire consideration, except an automobile accepted as $400 cash and turned over to Harris, for that conveyance was notes against the property. These notes were not paid, the lumber company recovered title and possession of the Nickelson lot, and tendered it to Harris on the trial, subject to payment of his debt to it against such property. Under such circumstances we think no conversion of the property was shown. Having authorized or approved the sales, Harris was entitled to recover only the proceeds from the sales of the property after deducting therefrom his debt to the lumber company. 39 Cyc. 477; Lawley v. Hickenlooper, 64 Utah, 543, 231 P. 821, 36 A. L. R. 1331; Oellien v. Galt, 150 Mo. App. 537, 131 S. W. 158. The lumber company, as trustee, was also entitled to deduct the necessary expense to it in administering the trust.

■ Even if Harris were entitled to recover for a conversion of the property, the measure of damages sought by him and awarded in the judgment was erroneous. The damages awarded in the judgment were the difference between the $4,400 owed by Harris and the market value of the lots at the times of the sales of same. The sales were made more than a year prior to the time of the trial of this case. The Supreme Court has expressly held that in such cases the measure of damages is the difference between the debt of the beneficiary to the trustee and the market value of the land at the time of the trial. Boothe v. Fiest, 80 Tex. 141, 15 S. W. 799;

Mixon v. Miles, 92 Tex. 318, 47 S. W. 966; McCord v. Nabours, 101 Tex. 494, 109 S. W. 913, 111 S. W. 144; Sullivan & Co. v. Ramsey (Tex. Civ. App.) 155 S. W. 587.

Under the view we take of the case, however, this error is not material.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded.

Reversed and remanded.