## ASKEY v. OLIVER CHILLED PLOW WORKS.

### No. 12734.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 19, 1932.

Rehearing Denied Jan. 7, 1933.

John L. Poulter, of Fort Worth, for plaintiff in error.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, for defendant in error.

DUNKLIN, Justice.

This is the second appeal of this case; the disposition of the first appeal being by the Court of Civil Appeals at Eastland, as shown in 22 S.W.(2d) 743, 744. On the former appeal the suit was instituted by Askey against the Oliver Chilled Plow Works for the sum of $2,416.93 for conversion of certain promissory notes and farming implements. The judgment on that appeal was reversed and the cause remanded because of lack of proof to establish the alleged conversion. After the remand of the case, plaintiff filed a second amended original petition and he has prosecuted an appeal from the judgment of the trial court sustaining a general demurrer to that petition and dismissing his suit, after he had refused to amend.

According to allegations in plaintiff's petition he was engaged in the retail hardware implement business in the city of Decatur, and that he entered into a contract in writing with the defendant, by the terms of which it agreed to sell and did sell certain farming implements and machinery to him, which he in turn sold at retail to his farmer customers and received from them in part payment therefor some 97 promissory notes which he delivered to the defendant as collateral security for his indebtedness to it, and which defendant had wrongfully converted to its own use, without accounting to him for the balance due him after deducting therefrom the amount of his indebtedness to it, to wit, the sum of $602. It was alleged that the written contract, under which the parties dealt throughout all the transactions and in which contract defendant was designated as the first party and plaintiff as the second party, embodied this provision:

"Title to and ownership of all goods furnished by first party to second party on hand with and not sold or otherwise disposed of at retail by second party, in the ordinary and usual course of trade, shall remain vested in first party until all accounts or evidence of

debts due therefrom to first party shall be fully paid, and in addition thereto to secure all claims and demands against second party held by first party, or their assigns, whenever created, whether evidenced by open accounts, or notes, said first party reserves a lien upon all goods furnished by them to second party heretofore, now or hereafter and on hand with second party, or not sold by second party at retail in the regular course of business."

The contention presented in the amended petition is that the quoted provision of the contract showed an agreement to sell to the plaintiff all merchandise furnished to him with the retention thereon of a mortgage lien in favor of the defendant to secure any and all indebtedness which plaintiff might owe to defendant accruing under and by virtue of the terms of the contract. And in the amended petition the claim was made that the 97 promissory notes which plaintiff took in the sale of the machinery to his customers were delivered to defendant as collateral security only. Attached to the petition as an exhibit was a list of all of those notes with the names of the respective makers and the amount of each, aggregating more than $4,000, all of which plaintiff alleged defendant had collected and converted to its own use; and plaintiff sought a recovery of the balance remaining of that sum after deducting therefrom as a credit the sum of $602 which plaintiff admitted he owed to defendant.

As shown in the opinion of the Court of Civil Appeals on the former appeal of this case, the suit as theretofore instituted was to recover the value of 39 promissory notes representing purchase money for farming implements furnished to plaintiff by defendant and which notes plaintiff had transferred to defendant by written assignment, copied in that opinion, containing recitals, in substance, that the same were made as collateral security for plaintiff's indebtedness to defendant. The suit was for damages for the wrongful conversion of those notes which it was alleged belonged to plaintiff; and also for conversion of three farming implements belonging to plaintiff of the aggregate value of $39.50; and the judgment of the trial court awarding plaintiff the damages so claimed was reversed on the first appeal. In the opinion of Justice Leslie on that appeal, this is said:

"The very gist of an action for conversion is in the right of property or possession, and such an action cannot be maintained for the conversion of chattels by one who does not own the same or have an interest therein, or the right of possession. [Citing cases.]

"With these principles in mind, we pass to a direct consideration of the testimony relied on by the plaintiff. It discloses that he at no time, in his pleading or testimony, claimed to be more than a local agent of the defendant, selling machinery and implements in a locality for a commission. He testified that the notes he here charges to have been converted were turned over by him to the defendant as collateral security on his obligations to them. In disposing of the implements the plaintiff appears to have taken in part payment therefor numerous customers' notes. Such are the notes here alleged to have been converted. In delivering them to the defendant, he made a character of written assignment in this language: [Then follows a copy of the written assignment indorsed on the several notes reciting that the same were transferred to the defendant company as collateral security for plaintiff's indebtedness to the defendant.]"

The opinion then sets out the following testimony given by the plaintiff on the trial, with the final conclusions of the court with respect to the issue of conversion;

"'All the goods I handled of the Oliver Chilled Plow Works was on the consignment basis. * * * I did not object when they came up here collecting the notes, renewing the notes, and repossessing machinery. I wanted the notes collected, and I wanted the machinery sold and the proceeds applied on the notes. I went with Mr. Sadler. He took the notes I had taken from the various farmers. * * * I had this stuff for sale on commission. * * * The contract was made back in 1924. At that time I made a commission contract with them. * * * They did not sell me goods just as a wholesaler. * * * They said they would put the goods up here and for me to sell them; if I sold them on a credit, to send them the notes and they would collect them. That is the reason I turned the notes over to them. They said they would do the collecting. I would not have let them take those goods (new machinery) out of the house, but the goods were theirs. The only interest I had in them was the amount of my commission. * * * They shipped the goods up here; they were their property.'

"It would serve no useful purpose to further lengthen this opinion by quoting the testimony relied upon by the plaintiff. So far as the plaintiff's right of recovery for conversion of the 39 promissory notes is concerned, the evidence, to our mind, is conclusive against the plaintiff's ownership thereof, or any part thereof, as well as his right to possession of the same at the time of the alleged conversion. He failed to prove such general or special property right in the notes as would entitle him to a judgment. The verdict and judgment based upon the conversion of the notes we hold to be unsupported by any testimony. We so hold upon the authority of Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059. Further, and in any event, we hold that the evidence, if any, is insufficient to support the judgment, based upon the conversion of the notes, and the verdict and judgment are in

fact against the great weight and preponderance of the testimony.

"As to the three implements involved in the suit, we are of the opinion there is some evidence tending to support the charge of conversion."

The final conclusion reached was thus stated:

"We doubt the sufficiency of the petition as against a general demurrer, but no point presents the ruling of the court thereon. In view of a reversal and remand of the cause, we suggest that the trial court direct that both the plaintiff and the defendant replead their respective grounds of recovery and defense. Such, in our judgment, is necessary for a fair presentation of the issues and a proper development of the lawsuit, which, upon the present record, bears more of the earmarks of a suit for an accounting than for conversion."

It thus appears that there was a specific and final determination that title to the 39 notes in controversy was vested in the defendant and not in the plaintiff, and by reason of that fact the defendant was not guilty of the conversion charged against it. Plaintiff did not exercise his legal right to apply for a writ of error from that decision but proceeded to follow the case in the trial court to which it was remanded and there to try the case anew on an amended petition, presenting the same issue of title and conversion as had already been determined. On this appeal he again contends that the legal effect of the original contract between the parties and the transfer of the notes in controversy to the defendant was to vest title in him to the merchandise and notes in controversy, subject only to a chattel mortgage lien thereon to secure the defendant in any indebtedness which he might owe to it and that such title was a sufficient basis for his claim of conversion alleged in the amended pleading. However, his right to assert that claim is precluded by the former decision of the Court of Appeals which became final in the absence of any application for a writ of error to the Supreme Court.

While plaintiff's petition upon which he recovered the former judgment does not appear in the record before us, yet it is apparent from the allegations in the amended petition and the recitals in the opinion of plaintiff's pleadings on the former trial, that the 39 notes mentioned in that opinion and the 97 notes alleged in the amended petition all grew out of the same original contract between the plaintiff and the defendant, and necessarily all of them were of the same legal status with respect to title thereto; and necessarily title to the goods furnished to plaintiff had the same legal status.

Benavides v. Garcia, 290 S. W. 739, 740, by the Commission of Appeals, was a suit to construe a will, the construction of which had already been settled in another suit between other parties, and it was held that under the doctrine of stare decisis, the construction of the will by the Court of Civil Appeals in the former suit (Rossetti v. Benavides, 195 S. W. 208) was conclusive in the determination of the same issue in the second suit. After referring to the decision of the Court of Civil Appeals in the first suit and noting a denial of a writ of error by the Supreme Court therein, the Commission of Appeals had this to say:

"We think that decision governs this case and calls for an identical construction of the will. This conclusion is not predicated upon any theory or rule of res adjudicata or estoppel whatever. It is rather based upon the doctrine of stare decisis, which as a matter of public policy and sound legal administration requires the courts in the decision of cases to observe a proper respect for the prior decisions of the highest court. While the rule is not unbending, and the courts are not without power to depart from a prior ruling, or of course to overrule it, where cogent reasons exist, and where the general interest will suffer less by such departure, than from a strict adherence (Higgins v. Bordages, 88 Tex. 458, 31 S. W. 52, 803, 53 Am. St. Rep. 770), yet a due regard for the stability of rights acquired under the law as announced by the highest court of the state, to say nothing of the propriety of uniformity of decision by that court, requires that when a question of law has been definitely settled once it should remain the law unless there exists the strongest reasons for changing it. It is obvious this rule of decision is something entirely apart from the conception of res adjudicata or estoppel of any sort. Certain elements enter into the consideration of the binding force of a judgment, or the operation of an estoppel, that have no place whatever in the rule of stare decisis, and the force of the rule is the same whether the parties to the two suits are identical or not, and, as to estoppel, whether they or either of them knew of the prior decision or any of the facts inducing it. Concretely stated, the doctrine merely means that the decisions of law made by the highest court of the state become the law of that state.

"Black, on Judgments, correctly states it as follows:

"'According to the doctrine of the best cases, a title previously passed upon although in a suit between different parties, will not be again examined and adjudged in a case proceeding upon the same state of facts and presenting precisely the same question unless the same is manifestly erroneous. This, however, is not strictly upon the ground that the matter is res adjudicata, but rather upon those settled principles which induce the courts to abide by their own former decisions,

that is, the rule of stare decisis.' Black on Judgments, § 603."

Other authorities are then cited substantially to the same effect.

The doctrine there announced is what is termed "the law of the case," and in 3 Texas Jurisprudence, § 924, p. 1316, this is said:

"Generally, it may be said that the effect of reversal of a judgment is to restore the parties litigant to the same condition in which they were prior to its rendition. The parties are then allowed to proceed in the court below to obtain a final determination of their rights, in the same manner, and to the same extent, as if their cause had never been heard or decided by any court, subject, of course, to the doctrine of the law of the case. Accordingly, when a case is remanded for retrial on the issues, the lower court should proceed with the case as stated in the original pleadings. But when a cause is remanded for retrial of a designated issue or issues, it appears that the scope of the retrial is limited to a determination of such issues. The trial court has no power of adjudication as to matters in respect of which there has been no reversal.

"A trial court is without jurisdiction to entertain issues or questions, and they are properly excluded from the scope of the trial, where the mandate of an appellate court has finally decided such questions upon the same facts and pleadings."

We quote the following from section 926, page 1219:

"On retrial a court may not admit evidence on questions relating to issues not, by force of the mandate, before it. When a cause is reversed and remanded with instructions to the court below to hear evidence only as to a designated issue, and then to render judgment in accordance with the directions contained in the opinion, it is error to reopen the entire case on retrial; the evidence admitted must be confined to the point to be found, and must conform to the general rules of evidence. It is not competent to show by evidence aliunde that the main issue clearly made by the parties on the original trial of the cause was not decided, for such testimony would contradict a judgment which shows that the question was decided."

Also the following from section 940, page 1339:

"The rule which makes the decision of an appellate court the law of the case is founded upon public policy and is intended to put an end to litigation. The basis of the rule may be said to be the doctrine of stare decisis; at least in applying the rule, the courts so refer to it. Although the courts in this connection mention the doctrine of res adjudicata it seems that they do not regard the rule of the law of the case as being based upon that principle."

And in section 941, p. 1340, of the same work, it is pointed out that the decision of one Court of Civil Appeals is the law of the case upon a second appeal of the same case to another Court of Civil Appeals. The doctrine of the law of the case on subsequent trials is discussed on pages 1338 to 1343 of the same volume in accordance with numerous decisions cited.

The fact that the former decision in this case was between the same parties and that the plaintiff elected to abide by that decision without applying for a writ of error to the Supreme Court, renders the rule of stare decisis applicable here with special force.

It is our conclusion, therefore, that appellant here is in no position to assert the claim that the defendant was guilty of conversion of any of the notes in controversy, nor of any of the merchandise which had theretofore been delivered to him and some of which he had returned to defendant, as shown by an exhibit attached to the amended petition; since, according to the decision on the former appeal, title thereto was never vested in him but was vested in defendant.

Another count in plaintiff's petition was for an accounting between the parties with respect to the handling of the merchandise furnished to plaintiff by the defendant under their contract.

Since title to the notes and merchandise furnished to plaintiff had been finally determined to be vested in defendant and the issue of conversion thus definitely settled against the plaintiff, the accounting, for which the case was remanded, could not be upon the theory of conversion of the notes and merchandise, which was the only theory upon which plaintiff claimed an accounting in his amended petition, and therefore the general demurrer as to that claim was properly sustained. The amended petition presented no claim for an accounting for commissions earned in selling the goods nor for a general accounting between plaintiff and the defendant on the theory of his agency for the defendant in selling the merchandise and taking the notes therefor.

The claim of $5,000 as damages to plaintiff's credit and reputation was presented in paragraphs 6 and 7 of his petition, reading as follows:

"6. Plaintiff would further show that on the date above alleged the defendant herein with their malice aforethought and without any just cause or legal right forcibly entered upon plaintiff's premises and took actual and forcible possession of all goods, wares and merchandise, then in possession of plaintiff in the place of business in the city of Decatur which plaintiff had theretofore fully paid for in cash and the personal negotiable notes executed by plaintiff to defendant amounted to

the sum of $1,166.99, an itemized list of said merchandise being hereto attached and made a part hereof and marked exhibit 'B'. That all of said property was forcibly taken by the defendant without any just cause or legal right, and was taken in a wanton and malicious manner and in such a way as to injure and damage the credit and reputation of this plaintiff and his reputation for honest and fair dealing among his customers which conduct actually caused plaintiff damages in the further sum of $5,000.00.

"7. Plaintiff would further show that at said time the defendant maliciously and forcibly took from the possession of this plaintiff over his protest and against his will in addition to goods brought from defendant the following other items of property belonging to this plaintiff, towit: One Georgia-stock, of the value of $4.50; one 60-tooth Harrow, of the value of $27.50, one 3 horse-evener of the value of $7.50, and many other articles of machinery which plaintiff is now unable to describe all of which was forcibly taken from this plaintiff by the defendant and actually converted to its use and benefit to the plaintiff's damage in the sum of $40.50, with interest thereon from said date until paid at the rate of 6 per cent per annum."

But in his testimony quoted above, which was given controlling effect in denying the alleged conversion, plaintiff admitted that defendant had the legal title to, and right of possession of the goods theretofore furnished to him by defendant and then in his store, and by reason of that fact he did not object to the taking of them from his place of business. That admission precludes his right to claim damages to his credit and reputation for the forcible entry and taking of those goods; and there is no allegation to show any injury to his credit and reputation by the alleged forcible taking at the same time of the other three items that had not been furnished to him by defendant, considered separately and apart from the rightful entry and taking of the other articles at the same time. Indeed, according to the allegations the damages so claimed resulted from the alleged wrongful entry of plaintiff's place of business and there taking possession wrongfully of all the goods as a whole, with no basis for segregating injuries to his credit and reputation resulting from a wrongful taking of those three articles from damages of the same character resulting from the entry and taking of the other merchandise at the same time and with

his consent. Hence, as against a general demurrer the claim of damages for injury to credit and reputation must be considered as a whole; and when so considered the demurrer thereto was properly sustained.

■ With the issues of conversion and accounting and damages for injury to credit and reputation thus eliminated, plaintiff's only remaining demand was for conversion of the three items of merchandise referred to in the opinion on the former appeal, and described in his pleading as "a Georgia stock, valued at $4.50, a harrow, valued at $27.50, and a 3 horse power evener at $7.50," all aggregating the sum of $39.50, and also for the item of $133.84, alleged to have been paid by plaintiff as freight in returning to defendant some of the merchandise theretofore furnished to him by defendant. The aggregate of all of those items was $173.34, and the district court was without jurisdiction to determine that demand.

■ In Carswell & Co. v. Habberzettle, 99 Tex. 1, 86 S. W. 738, 740, 122 Am. St. Rep. 597, the following was said in an opinion by Chief Justice Gaines: "It is now the settled law in this court that, although the amount claimed in the petition may be sufficient to give the court jurisdiction of the case, yet if the facts alleged be such as to show no cause of action as to such part of the whole sum sued for, as to reduce it below the amount for which the court has jurisdiction, the suit should be dismissed."

The rule so announced has been applied in numerous other decisions, such as Richards Medicine Co. v. Graves (Tex. Civ. App.) 273 S. W. 702, and decisions there cited, to which might be added other decisions such as Haddock v. Taylor, 74 Tex. 216, 11 S. W. 1093; and according to that rule the trial court did not err in sustaining the general demurrer to plaintiff's amended petition and dismissing plaintiff's suit after his refusal to further amend his pleadings, notwithstanding a cause of action was alleged for the four items mentioned above.

■ The prayer of appellee for an affirmance of the judgment of the court below amounts to an abandonment of its cross-action against appellant, and therefore the merits of the same are not here involved.

For the reasons indicated, all assignments of error are overruled and the judgment of the trial court is affirmed.