## MORRISON v. FARMER.
### No. 5848.

Court of Civil Appeals of Texas. Amarillo.
March 8, 1948.
Rehearing Denied April 12, 1948.

Robert C. Johnson, of Dallas, for appellant.

Ogden, Mosley & Foshee, of Dallas, for appellee.

PITTS, Chief Justice.

This suit was instituted by appellee, Mrs. Viola J. Farmer, against appellant, D. H. Morrison, to enforce a trust and in the event such relief was denied for damages in the sum of $2,500 for the conversion of a house.

The case was tried to a jury on special issues resulting in a verdict for appellee upon which a judgment was rendered for appellee and appellant has perfected his appeal.

The record reveals that on or about September 12, 1946, appellee purchased a nine room house, in which she was then living, from Sears-Roebuck & Company of Dallas for a consideration of $400. She had occupied the house for six years prior to the purchase of it under a rental contract with the former owner when Sears-Roebuck & Company bought the lot together with the house and other improvements thereon in order to use the lot for building purposes. In order to get immediate possession of the premises from appellee, who was claiming her right to occupy the premises under the terms and provisions of a Government OPA regulation, Sears-Roebuck & Company contracted to sell the house to appellee for a consideration of $400 if she would move the same from the premises and give possession of the lot. The jury found the reasonable cash market value of the house to be $1,500 at the time of the sale and before it was moved from the lot purchased by Sears-Roebuck & Company.

The facts support the further findings of the jury to the effect that appellant entered into an oral agreement with appellee that he would purchase a lot for appellee in Dallas, pay for the same himself, move her house in question on the said lot, prepare the house for occupancy, all at his own expense and to deliver the improved premises to her for a total cost to her of not to exceed $5,700 plus ten per cent of the cost price which sum, according to the oral agreement between the parties, appellee bound herself to pay to appellant within a reasonable time out of the proceeds of a loan she would secure on the premises and improvements thereon. The jury further found the cost of moving the house and placing it in condition for occupancy was $4,600. The record further reveals that, although appellee paid cash out of her own funds for the purchase of the house, formal title to it was given through a bill of sale by mutual agreement to appellant. The record further reveals that appellant paid $2,150 for the lot agreeably selected by appellee and took title to the same in his own name; that appellant contends the cost price of the lot, the moving of the house and putting it in condition for occupancy, plus ten per cent of such total expenses amounted to $7,441, which sum he seeks to have appellee pay him before delivering the premises to her; that, although the evidence was conflicting, the jury found that appellant orally agreed with appellee that the total cost would not exceed $5,700 plus ten per cent of the same and the trial court rendered judgment directing appellant to execute and deliver to appellee a general warranty deed for the lot and improvements thereon free of liens, claims and encumbrances, upon the payment of the sum of $6,270 to him either by appellee or the loan company which makes the loan to her on the premises in question. The judgment likewise recites that it appears that appellee has secured a firm commitment from a loan company for the loan.

The evidence conclusively shows that by oral agreement of the parties appellant took formal title to appellee's house, bought the lot in question for appellee, moved the house

248

on the lot, reconditioned the house to please appellee, and assisted her toward getting a loan to reimburse him when a controversy arose between them about the amount she owed him. Appellee contends that appellant agreed to do the job for a sum not to exceed $5,700 plus ten per cent of the cost price while appellant contends that no such limitation was mentioned in the oral agreement and that the cost of the job plus ten per cent of it amounted to $7,441. He proposed to deed the lot to appellee and deliver the premises to her if she would pay him the said sum.

As a result of this disagreement appellee filed this suit on January 3, 1947, alleging the details by reason of which she contended that appellant was holding the property in trust for her and that the title to it should be decreed to her "upon the securing by her of a valid first lien and the negotiation thereof so as to make the money available to defendant in such a sum as will compensate him in accordance with the provisions of said contract, all of which she is now ready, willing and able to do and perform." In the alternative she pleaded specific performance or the enforcement of an expressed trust. She further pleaded in the alternative constructive trust by reason of actual fraud, intended misrepresentations and concealments and unconscionable advantages on the part of the appellant. Finally she pleaded in the alternative conversion of her house by appellant for which she claimed damages. She further pleaded that, in any event, she had no adequate remedy at law for the enforcement of the trust and appealed to the court for the enforcement of her equitable rights in the matter.

Appellant correctly states in his supplemental brief that the trial court tried the case upon the theory of an expressed oral trust, submitted issues to the jury on that theory alone, and rendered its judgment for appellee on the expressed oral trust theory. Article 7425b—7, Vernon's Annotated Civil Statutes, passed by the Forty-Eight Legislature in 1943 and amended by the acts of the Forty-Ninth Legislature in 1945, known as the Texas Trust Act, invalidated an expressed oral trust. Prior to the passing of such act an expressed parol trust could be created in land by an oral agreement but

that act precludes such. Klein v. Sibley, Tex.Civ.App., 203 S.W.2d 239.

Appellee contends that, in case we hold that the Texas Trust Act precludes an expressed oral trust, she pleaded constructive trust in the alternative, proved constructive trust, which has support in the judgment. As previously stated by us, she pleaded constructive trust in the alternative by reason of fraud, misrepresentations and unconscionable advantages but the record does not reflect sufficient evidence introduced to support such a pleading and no issues were submitted to the jury by the trial court in support of such a pleading. Neither does the record support a plea of conversion of the house in question. "To constitute a 'conversion' of property there must be some repudiation of the owner's right, or an exercise of a dominion over it wrongfully, in denial of, or inconsistent with, the owner's right." Lingo Lumber Co. v. Harris, Tex.Civ.App., 11 S.W.2d 589, 590. The testimony conclusively shows that appellant took title to and possession of appellee's house by agreement of the parties to move it and hold it in trust for appellee until the terms of the oral agreement were consummated.

This record fully reveals that appellant and appellee entered into an oral agreement to engage in a joint adventure in which they both had money invested. The details of that agreement were not very fully expressed. However at the conclusion of the joint adventure the investment resulted in improved premises. The jury found the value of the property appellee invested in the joint adventure to be $1,500. It is undisputed that such property was a house which she turned over to and entrusted with appellant, who by agreement of the parties, moved it to a vacant lot, attached it to the lot in a manner that made it a part of the realty. At the conclusion of the joint adventure the parties each owned an equitable interest in an improved lot. The record further reveals that it was the intentions of the parties that appellee was to have title to the property at the conclusion of the joint adventure upon reimbursing appellant for the amount of his investment in the joint adventure plus

ten per cent of the same as a contractor's fee with the total sum due him either limited to $6,270 or without any limitation on his part of the investment, but the jury found in effect upon conflicting testimony that his interest therein was limited by oral agreement of the parties to be not more than $6,270.

Vol. 1 Bogert on Trusts, and Trustees, § 1, says a trust is a fiduciary relationship in which one person holds a property interest for another, subject to an equitable obligation to keep or use that interest for the benefit of the other.

Christopher v. Davis, Tex.Civ.App., 284 S.W. 253, 257, quotes Underhill in his work on Trusts as follows: "A trust is an equitable obligation, either expressly undertaken or constructively imposed by the court, under which the obligor (who is called the trustee) is bound to deal with certain property over which he has control (and which is called the trust property) for the benefit of certain persons (who are called the beneficiaries or cestuis que trust) of whom he may or may not himself be one."

It appears to us that the parties in this case intended to create a trust of some nature. However, it has been held that without explicit language importing an intention to create a trust, a court of equity may infer that such was the intention of the parties from what they did as well as from what they said. Equity presumes an intent to hold property for the benefit of a person who is rightfully entitled to it. A person who furnished all or any part of the consideration is entitled to benefits for all or a proportionate part of the same in a trust and particularly in a resulting trust. 65 C.J. 393, Paragraph 160; 397, 399, Paragraph 163, Paragraph 164.

The Supreme Court held in the cases of McCoy's Heirs v. Crawford, 9 Tex. 353-357, and Hix v. Armstrong, 101 Tex. 271, 106 S.W. 317, that: "It is well settled that, where one buys land with the money of another and takes the deed in his own name, a trust results in favor of the person whose money was employed in making the purchase. The latter is the equitable owner of the land, and the purchaser is a mere trustee.

and holds for the benefit of him who paid the purchase money." Such rule still prevails and we cite 42 Tex.Jur., page 637, Section 36, and numerous authorities there cited in support of the rule.

Trusts may be either expressed or implied. Expressed trusts are those created by direct and positive acts of the parties usually expressed in writing. Implied trusts are usually raised or determined by operation of law or rules of equity for the purpose of carrying out the presumed intentions of the parties or to protect against fraud. Implied trusts are either resulting trusts or constructive trusts. Resulting trusts usually involve the questions of presumed intentions of the parties and the equitable doctrine of consideration an equitable title as distinguished from legal title while constructive trusts may not have been created by words evidencing a direct intention to create a trust but they often involve a presence of fraud by reason of which equitable title or interest should be fixed in some person other than the taker or holder of the legal title.

O'Connor v. Vineyard, 91 Tex. 488, 44 S.W. 485, 487, quotes from Perry on Trusts as follows: "Resulting trusts are trusts that the courts presume to arise out of the transactions of parties, as if one man pays the purchase money for an estate, and the deed is taken in the name of another. Courts presume that a trust is intended for the person who pays the money."

For a more thorough discussion of trusts we cite the following authorities: 65 C.J., 220–225, 363–367 and 454; 54 Am.Jur. 147, Paragraph 188, 42 Tex.Jur. 611, Section 10; 635, Section 34; 649, Section 45; 26 Ruling Case Law under title of "Trusts", §§ 57 and 78; Vol. 2 Bogert on Trusts and Trustees, Chapter 23, §§ 451 to 469; Spangler v. Spangler, Tex.Civ.App., 26 S.W.2d 463, affirmed Tex.Com.App., 41 S.W.2d 60.

A court of law looks only to the legal ownership according to the deeds evidencing title from the common source, while a court of equity keeps its eye on the consideration that passed and protects the party who furnished it or any part of it. Hornbeck v. Barker, Tex.Civ.App., 192 S.W. 276.

As previously stated, it appears that this case was tried on a wrong theory although other theories were pleaded in the alternative. It appears to us that a trust did arise out of the transactions had and that such a trust was a resulting trust. It further appears under the pleadings, evidence and jury findings that appellee was entitled to a judgment protecting her interest in her part of the investment in the joint adventure. The rule is well established that, although a case may have been tried and judgment rendered in the trial court upon an erroneous theory, if the case has been correctly decided upon any theory presented by the record, it is the duty of the appellate court to affirm the judgment. Green v. Cross, 79 Tex. 130, 15 S. W. 220; Bullock v. Crutcher, Tex.Civ.App., 180 S.W. 940; Calvin v. Neel, Tex.Civ.App., 191 S.W. 791; Speed v. Sadberry, Tex.Civ. App., 190 S.W. 781; Ellerd v. Murray, Tex. Civ.App., 247 S.W. 631. In view of the record and the rule cited it is our opinion that the judgment of the trial court should be affirmed. All of appellant's points to the contrary are therefore overruled and the judgment of the trial court is affirmed.