## STAATS et al. v. MILLER.
### No. 6131.

Court of Civil Appeals of Texas. Amarillo.
April 16, 1951.

Rehearing Denied May 21, 1951.

James W. Witherspoon and John D. Aikin, Hereford, for appellants.

Cowsert & Bybee, Hereford, for appellee.

LUMPKIN, Justice.

In this suit the plaintiffs, O. T. Staats and F. M. Woolbright, seek to recover from the defendant, H. E. Miller, d/b/a H. E. Miller Oliver Co., damages in the sum of $1500 and the sum of $500 as exemplary damages. The plaintiffs contend that the defendant converted a cotton harvester of the reasonable market value of $1500. After the introduction of plaintiffs' testimony in a trial before a jury, the court peremptorily directed a verdict in favor of the defendant and rendered judgment accordingly. From this judgment the plaintiffs duly excepted and have perfected their appeal to this court.

The plaintiffs are farmers residing in Deaf Smith County, Texas. The defendant is a farm implement dealer located at Hereford, Texas.

The plaintiffs alleged that on October 15, 1948, they each purchased from the defendant an undivided one-half interest in an Oliver Cotton Harvester. The price was $1,255 of which they paid $500 and executed a note in the sum of $755. On March 7, 1949, Staats finished paying what he owed on the note, and on the same date Woolbright paid all but $200 of what he owed on it. The plaintiffs alleged that during the latter part of the harvest year 1949, the machine was in need of repair; that the defendant instructed them to bring the harvester to his place of business and he would repair it free of cost; that they delivered it to the defendant and, since they no longer had any use for it, authorized him to sell it for as much as $1000. This he agreed to do. Further, he was authorized to apply $200 of the selling price to the debt Woolbright still owed; and, also, the defendant was to receive a reasonable commission for the sale.

The plaintiffs alleged that the relationship of agent and principal existed between them and the defendant, and that he occu-

pied a fiduciary relationship to them in the sale of their machine. They pleaded that the defendant did sell the machine; that he claimed title to it and denied the plaintiffs' title; that he refused to tell them to whom he had sold it or to reveal the amount he had received for it or to account to them in any manner for the sales price of the harvester.

The plaintiffs alleged that the machine was of the reasonable value of $1500, that the defendant owes the plaintiffs the sum of $1500, less $200 and a reasonable commission in the sum of $75. They pleaded a demand upon the defendant for the money and a refusal on the part of the defendant to pay the damages or any part thereof. They alleged that the defendant claimed title to the machine and refused to acknowledge any right of plaintiffs in and to the machine or to the proceeds from it. The plaintiffs asserted that the conversion of the machine was willful and deliberate on the part of the defendant; that it was his intention to deprive them of their interest in the machine; and that, therefore, plaintiffs were entitled to exemplary damages in the sum of $500 for the illegal disposition of their cotton harvester.

The defendant pleaded that at the time of the purchase the plaintiffs executed in favor of the First National Bank of Hereford a chattel mortgage covering the cotton harvester which secured their note for $741.35. This note was payable to the H. E. Miller Oliver Company and by consent of the plaintiffs was left with the First National Bank for collection. The defendant alleged that neither of the plaintiffs paid the note at maturity, although demand was made upon them; that, later, on March 7, 1949, the plaintiffs paid all of the note except $200, which was represented by the execution and delivery of a promissory note signed by the defendant and Woolbright and made payable to the order of the First National Bank of Hereford. The defendant pleaded that this note became due on August 7, 1949, and that he paid it together with the interest due; that, on August 10, 1949, he demanded of Staats the balance due and informed him that if this amount was not paid, he would repossess the machine. He further alleged that on September 1, 1949, Staats turned the machine over to him in cancellation of the debt and that thereafter the plaintiffs had no interest or title in it. The value of the machine when he received it, the defendant pleaded, was $350. He alleged that he had received the machine in cancellation of the indebtedness; that the indebtedness was due and owing and was secured by the chattel mortgage lien; and that, sometime later, because of a shortage of cotton pickers, he was able to sell it for $1000.

The evidence shows that the plaintiffs voluntarily brought the cotton harvester to the defendant's place of business. They authorized him to sell the machine and to deduct the unpaid balance owing on the original purchase price. The defendant denied that he agreed to sell it for the plaintiffs. He filed a motion for an instructed verdict on the grounds that since the evidence clearly shows that the plaintiffs had voluntarily returned the cotton harvester to him and had authorized him to sell it and since the plaintiffs had not demanded a return of the machine, there could have been no conversion. The defendant insisted that since the plaintiffs had filed a single cause of action, i. e., conversion, the trial court should instruct the jury to return a verdict in favor of the defendant. As we have seen, the court sustained the motion.

When the word "conversion" is used to signify a tort, it may be defined as any distinct act of dominion wrongfully asserted over another's personal property in denial of the owner's rights or inconsistent with them. American Surety Co. of New York v. Hill County, Tex.Com.App., 267 S.W. 265; France v. Gibson, Tex.Civ.App., 101 S.W. 536. The essence of conversion is not the actual taking of the owner's property or carrying it away; it is wrongfully depriving the owner of its use and possession. The taking must be wrongful, for without the element of wrong no tort can be committed and conversion cannot occur. To be wrongful, the conversion must be wholly without the owner's sanction or assent, either expressly or implied. Terry v.

Witherspoon, Tex.Civ.App., 255 S.W. 471, affirmed by Tex.Com.App., 267 S.W. 973; Bowers, The Law of Conversion, Little, Brown and Company (1917), p. 6; Compton v. Farrington, Tex.Civ.App., 16 S.W.2d 345; Lingo Lumber Co. v. Harris, Tex.Civ. App., 11 S.W.2d 589; Wilson v. Moore, 57 Tex.Civ.App. 418, 122 S.W..577.

Conversion is an offense against the possession of property. Reef v. Hamblen, Tex.Civ.App., 47 S.W.2d 375, err. ref.; American Surety Co. of New York v. Hill County, Tex.Civ.App., 254 S.W. 241, affirmed by Tex.Com.App., 267 S.W. 265. It must be alleged with particularity and certainty. Field v. Davis, Tex.Civ.App., 32 S.W. 71. If the plaintiff bases his claim on ownership of the property, he must allege that he is the owner and had possession or had the right of immediate possession at the time of the alleged conversion. Oliver Chilled Plow Works v. Askey, Tex.Civ. App., 22 S.W.2d 743, on subsequent appeal, Tex.Civ.App., 57 S.W.2d 210.

In this case the plaintiffs pleaded that they owned the harvesting machine and that they brought it to the defendant's place of business and authorized him to sell it. This act and authorization placed the lawful possession of the property in the hands of the defendant. The plaintiffs did not plead the right of immediate possession. Since the machine was subject to a debt, part of the purchase price, which was still due and owing, it was necessary for the plaintiffs to plead a tender of the $200. But the plaintiffs failed to allege a tender; therefore, under their own allegations, the paramount right to possession was in the defendant, both by the express act and consent of the plaintiffs as well as by the fact that the defendant had a purchase money lien on the property. Since the plaintiffs failed to allege or prove an action for conversion, the court did not err in ordering an instructed verdict. 65 C.J. 65, par. 106; 53 Am.Jur. 879, par. 87.

Next, the plaintiffs insist that the trial court erred in granting the defendant's motion for an instructed verdict because their allegations were sufficient to make out a cause of action for money had and received.

In 29 Tex.Jur. 734, it is said: "To maintain an action for money had and received there must be some privity between the parties in relation to the money sought to be recovered. As a rule the defendant must have received the money as an agent for the plaintiff, or pursuant to a request to pay the money to the plaintiff."

Again on page 737, it is said: "The petition in an action for money had and received should allege facts from which an implied promise may be presumed."

The plaintiffs alleged that they delivered the machine to the defendant and told him to repair it and to sell it for as much as $1000. They told him that if he received more than $1000, he could retain all in excess of that amount as his commission. They alleged that the $1000 was to be divided equally between them after deducting the $200 owed by Woolbright. There is no allegation that the defendant promised to pay these sums to the plaintiffs, nor is there an allegation that there was an implied promise to pay them. The plaintiffs did not plead the necessary allegation that they requested these particular payments from the defendant. It is true, however, that the petition did allege a demand for $1500, less the $200 owed the defendant, less a commission of $75. But the demand of $1500 is alleged to be the value of the machine rather than the amount agreed upon by the parties. Although the petition states that the defendant refused to pay the sum of $1500, there is no allegation that he refused to pay $1000 less the $200. In their prayer the plaintiffs asked for damages in the sum of $1500 as actual damages and $500 as exemplary damages, but they did not pray for the payment of $1000 less the $200 indebtedness. The plaintiffs did not prove that they demanded of the defendant the $1000 received from the sale of the machine less the indebtedness. If any demand was made, it was for the reasonable value of the machine. These allegations—which the plaintiffs contend are sufficient to make out a cause of action for money had and received —are not an alternate plea to the allegations of conversion. In our opinion they did not allege an action for money had and received. 29 Tex.Jur. 733 et seq.

In their next point of error the plaintiffs complain of the action of the trial court in overruling their motion for leave to file a trial amendment in which they intended to allege a cause of action for money had and received. This motion was presented after the plaintiffs had rested their case and after the court had granted the defendant's motion for an instructed verdict. However, since the plaintiffs had failed to introduce sufficient proof to make out a case of money had and received, it would have been useless to permit the plaintiffs to amend their pleadings unless the court had also permitted them to reopen the case. The plaintiffs did not request this permission. Whether a trial amendment shall be allowed rests within the discretion of the trial court, and its order will not be disturbed unless abuse of discretion clearly appears. The plaintiffs have not shown wherein the trial court abused its discretion in overruling the plaintiffs' motion. Wright v. Texas & P. Ry. Co., Tex.Civ.App., 205 S.W.2d 415; Vermillion v. Haynes, 147 Tex. 359, 215 S.W.2d 605; Rule 66, Texas Rules of Civil Procedure.

Next, the plaintiffs complain of the court's action in admitting the chattel mortgage in evidence. They insist that it was inadmissible because it does not describe a note or debt and because the First National Bank of Hereford and not the defendant is named as the mortgagee. The plaintiffs admit that the mortgage covered the harvesting machine and that there was a purchase money lien representing the unpaid balance. Likewise they admit that when they purchased the property they intended to and did give a mortgage on it. Certainly, the introduction of the chattel mortgage did not cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

Finally, the plaintiffs insist that the court erred in refusing to permit the plaintiff Staats to explain on redirect examination a matter about which he had been questioned on cross-examination. We do not believe the ruling of the court amounts to the contention made by the plaintiffs: the defendant's objection was directed to the form of the question asked the plaintiff Staats, i. e., that it was leading in form. Possibly the form of the question was not leading. But, be that as it may, the court's ruling would not have prohibited plaintiffs' counsel from adducing the same testimony by questions properly framed.

The record in this case does not reveal reversible error. All of the plaintiffs' points of error are overruled; we affirm the judgment of the trial court.