**Jonathon KNUTSON, Plaintiff,**

v.

**REXAIR, INC., Thomas E. Lamb, J.V. Sanders, and Douglas Cunningham, Defendants.**

**Civ. 3–90–511.**

United States District Court,
D. Minnesota,
Third Division.

Oct. 30, 1990.

John R. Koch, Reichert, Wenner, Koch & Provinzino, St. Cloud, Minn., for plaintiff.

George Eck, Dorsey & Whitney, Minneapolis, Minn. and Roy L. Shults and Douglas Bordewieck, Mitchell, Silberberg & Knupp, Los Angeles, Cal., for defendants.

## ORDER

DEVITT, District Judge.

### INTRODUCTION

In this diversity action based upon the Minnesota Franchise Act, Minn.Stat. § 80C.01 *et seq.*, defendants Rexair, Inc. ("Rexair"), Thomas Lamb ("Lamb"), J.V. Sanders ("Sanders"), and Douglas Cunningham ("Cunningham") move pursuant to Fed.R.Civ.P. 12(b)(3) to dismiss plaintiff Jonathon Knutson's complaint for improper venue or, alternatively, to transfer the case to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404. Movants rely principally upon a contractual forum selection clause contained in a distributor agreement signed by plaintiff. For the reasons set forth below, the court grants defendants' transfer motion.

### BACKGROUND

Defendant Rexair is a Delaware corporation with its principal place of business in Troy, Michigan. Defendants Lamb, Sanders, and Cunningham serve as officers of Rexair. Defendant Rexair manufactures the "Rainbow" line of vacuum cleaners and related accessories. Rather than marketing at retail, Rexair sells its products to registered general distributors under written agreements. These distributors or franchisees then peddle directly to consumers.

Plaintiff became a registered Rexair distributor for forty five counties in northern Minnesota in 1983. In August, 1984, plaintiff signed his first distributor agreement. Evidently, defendants asked plaintiff to sign a new distributor agreement annually. Attached to each of these agreements were a list of counties comprising plaintiff's "area of primary responsibility" and an addendum specifying the agreement's terms.

In 1985, Rexair added a forum selection clause to its standard distributor agreement. The forum selection clause is contained in ¶ 25 of the agreement and provides:

APPLICABLE LAW. This Agreement and the relationship of the parties is to be governed by and construed according to the laws of the State of Michigan. Any cause of action, claim, suit or demand by [Plaintiff], allegedly arising from or related to the terms of this agreement or the relationship of the parties, shall be brought in the Federal District Court for the Eastern District of Michigan, Southern Division, in Detroit, Michigan, or in the Oakland County Circuit Court, Pontiac, Michigan. Both parties hereto irrevocably admit themselves to, and consent to, the jurisdiction of said courts. The provisions of this paragraph shall survive the termination, non-renewal or expiration of this Agreement.

[Plaintiff] is aware of the business purposes and needs underlying the language of this Paragraph ... and with a complete understanding thereof agrees to be bound in the manner set forth.

In 1987, Rexair grew disappointed with the performance of its registered distributors in North and South Dakota. One of Rexair's regional sales directors, Paul McIntyre, telephoned plaintiff and offered him the Dakota distributorships for $50,000.00. This fee would be assessed through a $15.00 surcharge against each new Rainbow vacuum cleaner purchased by plaintiff for resale in North or South Dakota. In the course of the telephone conversation, plaintiff accepted Rexair's offer and subsequently began to establish a sales network in the Dakotas. Through an agent, plaintiff established offices in several cities, hired office managers, recruited sales personnel, contracted for warehouse space, instituted sales training programs, and organized sales promotions. Plaintiff's first sales in the Dakotas occurred in October or November of 1987. The $50,000.00 charge first appeared in plaintiff's August 31, 1987 account statement. Plaintiff's statement first reflected deductions from this account in December, 1987, and continued to do so until July, 1990, when plaintiff satisfied the $50,000.00 fee.

At the time defendants offered plaintiff the Dakota distributorships, Rexair did not have on file with the Minnesota Commissioner of Securities a public offering statement or any other registration, nor did Rexair provide plaintiff with a public offering statement before the sale.

Plaintiff commenced this action in August, 1990 in Minnesota state court alleging only that defendants violated the Minnesota Franchise Act by selling an unregistered franchise. Defendants removed the action pursuant to 28 U.S.C. § 1446(d) and now move to dismiss plaintiff's complaint for improper venue or, alternatively, to transfer the action to the United States District Court for the Eastern District of Michigan.

### DISCUSSION

Defendants argue that the forum selection clause contained in Rexair's standard distributor agreement applies to plaintiff's claim under the Minnesota Franchise Act and must be enforced. Plaintiff responds (1) that his claim under the Minnesota Franchise Act does not arise out of the "relationship of the parties" as that term is defined in the distributor agreement, and (2) that the forum selection clause is the product of unequal bargaining power and is, therefore, unenforceable.

■ As a threshold matter, the court notes that it is to apply federal law to determine the applicability and validity of the forum selection clause. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 28–29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988); *Fibra–Steel, Inc. v. Astoria Industries, Inc.*, 708 F.Supp. 255, 257 (E.D.Mo. 1989); *Hoffman v. Minuteman Press International, Inc.*, 747 F.Supp. 552 (W.D. Mo.1990).[1]

1. In *Ricoh*, the Supreme Court commanded federal courts sitting in diversity to apply federal law, specifically 28 U.S.C. § 1404, to analyze forum selection clauses in the context of a transfer motion. The Ninth Circuit Court of Appeals has recognized, however, that the *Ricoh* holding does not necessarily extend to dismissal motions:

In [*Ricoh* ], the [Supreme] Court decided that federal law applies to a motion to transfer venue under 28 U.S.C. § 1404(a) when venue is designated in a contractual forum selection clause. The Court stated that because there was a federal statute, 28 U.S.C. § 1404(a), directly on point, the district court was required to apply federal law. Our case involves a motion to dismiss ... and because there is no federal rule directly on point the [*Ricoh* ] analysis is inapplicable.

*Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512 n. 2 (9th Cir.1988). Indeed, our Eighth Circuit Court of Appeals, recognizing that contractual forum selection clauses share both substantive and procedural aspects, has applied state law to analyze similar clauses in the past. *Farmland Industries, Inc. v. Frazier–Parrott Commodities*, 806 F.2d 848, 852 (8th Cir.1986); *see General Engineering Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356–58 (3d Cir.1986) (forum selection clause interpreted according to state law); *Medicine Shoppe International, Inc. v. Browne*, 683 F.Supp. 731, 732–33 (E.D.Mo.1988); *Giroir v. MBank Dallas, N.A.*, 676 F.Supp. 915, 921–23 (E.D.Ark.1987).

■ Before proceeding to the merits of defendants' motions for dismissal or transfer, the Court must determine whether the forum selection provision at issue applies to plaintiff's claim under the Minnesota Franchise Act. Forum selection clauses may apply to non-contractual theories of recovery. *Stephens v. Entre Computer Centers, Inc.,* 696 F.Supp. 636, 638 (N.D.Ga. 1988); *Crescent International, Inc. v. Avatar Communities, Inc.,* 857 F.2d 943, 944 (3d Cir.1988) ("pleading alternate non-contractual theories is not enough alone to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms").

■ In *Stephens,* the forum selection clause was drafted broadly to include "... any action brought by either party in any [federal or state] court." *Id.,* 696 F.Supp. at 638. The clause did not limit its applicability to actions arising under or in connection with the contract. *Id.* Because of its broad language, the *Stephens* court reasoned that the clause applied to claims arising "either 'directly or indirectly from the *business relationship evidenced by the contract.*'" *Id.* (emphasis supplied).

Here, as in *Stephens,* the forum selection clause is worded broadly to include "[a]ny cause of action, claim, suit or demand by [plaintiff], allegedly arising from ... the relationship of the parties." Plaintiff argues for a narrow interpretation of this provision, relying upon a different section of the distributor agreement entitled "Relationship of the Parties." This section provides:

> The relationship between Rexair and Distributor during the term of this agreement will be that of vendor and vendee. Distributor is not the agent or representative of Rexair for any purpose whatso-

ever and is not granted under this agreement or otherwise any express or implied authority to assume or create any obligation or responsibility on behalf of or in the name of Rexair or to bind Rexair in any manner or thing whatsoever.

However, this section appears intended to preclude an interpretation of the agreement establishing an agency relationship between Rexair and plaintiff. Plainly, the provision is not definitional and was not intended to be applied in construing the forum selection clause.

Plaintiff also argues that his Franchise Act claim in no way depends upon the distributor agreement as the alleged franchise relationship is embodied exclusively in a separate oral contract. However, the distributor agreement at issue incorporates the terms of the oral agreement alleged by plaintiff and dictates the parties' obligations with respect to the alleged franchise. In any event, plaintiff's claim arises directly from the parties' business relationship. This relationship is evidenced by the distributor agreement, and the forum selection clause is drafted in sufficiently broad terms to apply to plaintiff's claim under the Minnesota Franchise Act.

■ With respect to defendants' transfer motion, 28 U.S.C. § 1404(a) allows a district court, for the convenience of parties and witnesses and in the interest of justice, to transfer a case to a court where the case might have been brought. The Supreme Court instructs that the existence of a forum selection clause is only one of several factors which a court must consider when ruling on a motion to transfer, though such a clause is "a significant factor that [must] figure centrally in the District Court's calculus." *Ricoh,* 487 U.S. at 29, 108 S.Ct. at 2244. Indeed, this court recognizes that

This court interprets *Ricoh* to require that federal courts sitting in diversity apply federal law when analyzing contractual forum selection clauses in the context of dismissal motions as well as transfer motions. When an arguably procedural issue is addressed by one of the Federal Rules, this court must apply the Federal Rule unless it is constitutionally defective. *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). Here, Fed.R. Civ.Pro. 12(b)(3) clearly applies to defendants'

dismissal motion. *Cf. Stewart Organization, Inc. v. Ricoh Corp.,* 810 F.2d 1066, 1068 (11th Cir.1987) (per curiam) (en banc); *aff'd on other grounds,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) ("Congress has approved the adoption of Fed.R.Civ.P. 12(b)(3) and 41(b), federal procedural rules that direct federal courts as to the principles involved in deciding questions of venue ... If venue were to be governed by the law of the state in which the forum court sat ... these rules would [have no legitimacy].")

the federal judiciary has traditionally accorded momentous weight to contracting parties' legitimate expectations in the area of forum selection. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972) (forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable"); *Ricoh*, 487 U.S. at 33, 108 S.Ct. at 2249–50 (Kennedy, J. *concurring*); *but see Fibra–Steel, Inc. v. Astoria Industries, Inc.*, 708 F.Supp. 255, 256–57 (E.D.Mo.1989) (denying transfer motion where court found that forum selection clause did not "weigh heavily enough to tip the scales away from plaintiff's choice of forum"). Other factors to be considered include the convenience of the alternate forum "given the parties' expressed preference for that venue, and the fairness of transfer in light of the ... parties' relative bargaining power." *Ricoh*, 487 U.S. at 29, 108 S.Ct. at 2244. A party resisting consideration and enforcement of a forum selection clause bears the burden of demonstrating unreasonableness or overreaching. *See Kline v. Kawai America Corp.*, 498 F.Supp. 868, 871 (D.Minn.1980); *C. Pappas Company, Inc. v. E. & J. Gallo Winery*, 565 F.Supp. 1015, 1017–18 (D.Mass.1983).

Plaintiff essentially argues that the forum selection clause is the product of unequal bargaining power. Plaintiff describes himself as a man with a tenth-grade education, accustomed to manual labor and unsophisticated in the ways of law or business. However, plaintiff's own representations concerning his business operations and acumen belie this argument. Plaintiff admits that he has successfully operated a sales network in three states, recruited and retained numerous employees to fill various positions, and contracted for office and warehouse space on a number of occasions. Thus, the court finds that the forum selection clause is not the product of meaningfully disparate bargaining power.

As to the convenience of the Michigan forum, all individual defendants reside there and Rexair's principal place of business is in Troy, Michigan. Plaintiff avers persuasively that Minnesota is a slightly more convenient forum. However, in the face of the parties' expressed preference for the Eastern District of Michigan, and that Michigan appears substantially more convenient to defendants, plaintiff's argument loses much force.

## CONCLUSION

This action is improperly venued; thus, transfer or dismissal is warranted. The court concludes that transfer of this action to the Eastern District of Michigan is the superior alternative. *See Giroir v. MBank Dallas, N.A.*, 676 F.Supp. 915, 923 (E.D. Ark.1987) (recognizing transfer as the better option).

Based upon the files and briefs and arguments of counsel,

IT IS ORDERED that:

1. Defendants' motion to transfer this action to the United States District Court for the Eastern District of Michigan, Southern Division is GRANTED.

2. Defendants' motion to dismiss for improper venue is DENIED.