John M. SUMMERS, Plaintiff,

v.

Pamela Hall GUSS, Defendant.

No. 95–CV–6318.

United States District Court,
W.D. New York.

Feb. 26, 1998.

Michael W. Malarney, Rochester, NY, for Plaintiff.

Francis E. Kenny, Nixon, Hargrave, Devans & Doyle, LLP, Rochester, NY, for Defendant.

## DECISION AND ORDER

SIRAGUSA, District Judge.

This is an action in which the plaintiff is suing to collect on a promissory note. Before the Court is a motion by the defendant to dismiss the complaint, based upon a forum selection clause which the defendant main-

tains provides for exclusive jurisdiction in the Mexican Federal District Courts. The defendant has moved in the alternative for summary judgment on the ground that the plaintiff has no interest in the note in question. For the reasons stated below, both applications are denied.

## MOTION TO DISMISS

Between December of 1987 and June of 1991, the plaintiff and the defendant were principal co-owners of three Mexican corporations known collectively as "Royco." In June of 1991, the defendant purchased the plaintiff's interest in Royco. During the course of the negotiations leading up to the purchase, the defendant contacted the plaintiff numerous times in Rochester, New York, by telephone, letter and fax, and she met with the plaintiff in Rochester for approximately one week. Pursuant to a contract dated June 18, 1991, at closing in Mexico City the defendant was to pay the plaintiff $600,000 in cash.[1] In addition, the parties agreed that the defendant would sign a series of 174 promissory notes totaling approximately $2,783,118.[2] The 174 notes were not all the same, however. Fifty-five of the notes were signed by the defendant in her individual capacity and carried interest at 3%; sixty of the notes were signed by the defendant in her individual capacity and carried no interest; four of the notes were signed by the defendant on behalf of Profesionales En Tratamiento De Metales ("Protem") corporation and carried no interest; and the last fifty-five notes were signed by the defendant on behalf of Protem and carried 11.5% interest. All of these 174 notes were guaranteed by Mexican corporations.[3]

---

1. There is considerable confusion over several key dates in this action. The stock purchase agreement is dated June 18, 1991. The promissory notes written in Spanish are dated May 1, 1991 on the front, and June 18, 1991 on the reverse side. The loan agreement and promissory note at issue here are both dated May 1, 1991, however they refer to a stock purchase agreement dated May 1, 1991. The release, which will be discussed later, refers to a promissory note dated May 4, 1991. The parties disagree as to when the stock purchase agreement and promissory notes were signed.

2. The defendant states that there were only 170 notes, however the Court's review of copies of the actual notes shows that there were 174 notes.

3. The guarantees appear on the reverse side of the notes, under the heading "POR AVAL." Por Aval is a customary term used in Latin America to denote an unconditional guarantee under which the "avalor" is obliged to pay the debt obligation as if it were the primary debtor, without the need or prior demand on the maker. *Banco Nacional de Costa Rica v. Bremar Holdings Corp.*, 492 F.Supp. 364, 366 (S.D.N.Y.1980).

The 115 notes signed by the defendant individually were guaranteed by Herramientas Metalicas de Corte ("Hermecor"), Corporacion Arrendadora de Maquinas Para Produccion ("Campro"), and Profesionales En Tratamiento De Metales ("Protem"). The 59 notes signed by the defendant on behalf of Protem corporation were guaranteed by Hermecor and Campro.

The contract and the 174 promissory notes were written in Spanish. The contract contained a forum selection clause, that translated, states:

> "For the interpretation and performance of the present contract, the parties submit themselves to the jurisdiction and competence of the Federal District Courts, renouncing any other jurisdiction that could apply by reason of their present or future domicile."

Noticeably absent is any reference to Mexico. In her affidavit, the defendant alleges that the term "Federal District Courts" (los tribunales del Distrito Federal) refers to the Mexican Federal District Courts, not the United States Federal District Courts. The plaintiff does not dispute this. However, as it appears in the original, the term "Federal District Courts" is ambiguous.

The 174 promissory notes each also contained a forum selection clause, that translated, states:

> For all that is related with the interpretation, performance or judicial requirement for payment of the presently established obligations, the subscriber and the beneficiary expressly submit themselves to the jurisdiction of the competent courts of Mexico City, Federal District, expressly renouncing, therefore, any other jurisdiction that could apply by reason of their present or future domicile.

At closing, the parties also signed an agreement relating to certain life insurance policies. The agreement provided that in the event of either of the parties' deaths, the proceeds of the life insurance policies would be used to pay off any remaining indebtedness. This life insurance agreement was written in English and contained a New York forum selection clause.

Prior to closing, the defendant lacked $125,000 of the $600,000 in cash that she needed to close. The defendant contacted the plaintiff, and after some negotiations, the plaintiff agreed to loan her the money. At closing, the defendant in her individual capacity signed a loan agreement and one promissory note for the amount of $125,000, with no interest, which enabled her to close the deal. This loan agreement and note were written in English and did not contain a forum selection clause. The plaintiff alleges that the defendant has failed to pay as required, and he is suing in this Court to collect only on the aforementioned $125,000 note.

The defendant has moved to dismiss the action, arguing that any action to collect on this note is subject to the forum selection clauses found in the contract and in the other 174 promissory notes. However, the Court disagrees.

The defendant argues that the note at issue here was an essential part of the underlying sale of the business, and therefore should be governed by the forum selection clauses in the sale contract or the other 174 promissory notes. She relies essentially upon three cases to support this argument, none of which are controlling here. *Giroir v. MBank Dallas, N.A.*, 676 F.Supp. 915 (E.D.Ark.1987) is factually distinct and involved the application of a Texas venue statute. Moreover, while not all of the documents in *Giroir* contained a Texas forum-selection clause, they all contained a Texas choice-of-law clause. *Id.* at 922. Next, *Interfirst Bank Clifton v. Fernandez*, 853 F.2d 292 (5th Cir.1988) involved two documents, a loan agreement containing a choice-of-law clause and a security agreement with no such clause. In the case at bar, neither the loan agreement nor the promissory note contain a forum selection clause. Finally, *Friedman v. World Transportation, Inc.*, 636 F.Supp. 685 (N.D.Ill.1986) involved allegations of fraud in the inducement to enter a contract which did contain a forum selection clause. That was not a case where, as here, someone was suing to enforce an agreement which did not contain a forum selection clause. Accordingly,

the Court does not find the defendant's case law to be persuasive.

■ The United States Supreme Court has held that forum selection clauses in contracts "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). However, it is undisputed that the promissory note at issue here and the underlying loan agreement do not contain a forum selection clause. The loan agreement does refer to the stock purchase agreement, and in fact is contingent upon the successful completion of the stock purchase agreement, however it does not incorporate by reference the stock purchase agreement. Since the plaintiff's action relates only to the promissory note, the forum selection clauses in the stock purchase agreement and the other promissory notes do not necessarily control. *See Ainsley Skin Care of New York, Inc. v. Elizabeth Grady Face First, Inc.,* 1997 WL 742526, at *3 (S.D.N.Y. Dec.2, 1997).

As the District Court for the Southern District of New York has noted, "[s]ince the documents create separate obligations which can be enforced in separate actions, there is no reason to think that they must be enforced in the same forum." *Socline Corp. v. Podell,* 1996 WL 109076, at *2 (S.D.N.Y. March 12, 1996). This argument is strengthened by the fact that the parties signed an insurance agreement as part of the same underlying transaction which contained a New York forum selection clause. From this it is obvious that the parties did not intend to have Mexico be the sole and exclusive forum for any and all actions that could arise in regard to the sale.

Contrasted with this are cases such as *Ameritrust Co. National Assoc. v. Chanslor,* 803 F.Supp. 893 (S.D.N.Y.1992), *Greene's Ready Mixed Concrete Co. v. Fillmore Pacific Associates Limited Partnership,* 808 F.Supp. 307 (S.D.N.Y.1992) and *Faberge USA, Inc. v. Ceramic Glaze, Inc.,* 1988 WL 31853 (S.D.N.Y. March 28, 1988), where guaranty agreements did not contain forum selection clauses but specifically assumed duties under agreements that did. In those cases, as opposed to the present case, the guarantors specifically agreed to assume the duties of performing underlying contracts that contained forum selection clauses. Moreover, in *Ameritrust,* 803 F.Supp. at 896, and *Greene's Ready Mixed Concrete Co.,* 808 F.Supp. at 310, the courts also held that the forum selection clauses in the underlying agreements should be read into the guaranty agreements because they concerned the same subject matter and were executed contemporaneously. In the instant case, there is no question that the promissory note at issue is connected with the stock purchase, inasmuch as the money advanced under the promissory note was used to purchase the stock. However, the Court does not find that the promissory note "concerns the same subject matter" as the stock purchase agreement and the other promissory notes. The loan agreement and note at issue here are separate and distinct legal obligations that could be enforced without regard to the performance of the stock purchase agreement and other promissory notes. *See Packer v. TDI Systems,* 959 F.Supp. 192, 198–99 (S.D.N.Y.1997). Suppose, for example, that the plaintiff had assigned this one note to a third party. That third party could enforce the note against the defendant, even though he might not have any knowledge of the underlying transaction. Should that third-party assignee then be subject to a Mexican forum selection clause that does not appear anywhere in the note?

Moreover, there are differences between the various promissory notes which argue against treating the note at issue here as being subject to the forum selection clause found in the other 174 notes. The most obvious difference, of course, is that the one promissory note at issue here is written in English, while all the other notes were written in Spanish. In light of the fact that the only other agreement written in English, the insurance agreement, contains a New York forum selection clause, there is at least an inference that Mexican law would not apply to this one note. However, probably a more significant difference, and one that was not mentioned by the parties, is that the notes

written in Spanish are all guaranteed by Mexican corporations. Only the one English note is not guaranteed. That the 174 Spanish notes were guaranteed by Mexican corporations could well explain why they contain Mexican forum selection clauses and why the note at issue here does not. In any event, the notes with forum selection clauses are significantly different from the note at issue here, and the court declines to re-write the parties' agreement. The parties could easily have placed a forum selection clause in the note, but they did not. Accordingly, the Court finds that the promissory note at issue is not governed by any forum selection clause, and the motion to dismiss is denied.

### MOTION FOR SUMMARY JUDGMENT

The defendant has also moved for summary judgment on the grounds that the plaintiff assigned any interest he had in the note, and therefore is not a real party in interest to the promissory note at issue. As described above, the defendant purchased the plaintiff's interest in Royco in 1991, and as part of that purchase the defendant signed a total of 175 promissory notes to the plaintiff. However, in 1993, the defendant agreed to sell her interest in Royco to a corporation called OSG Tap & Die, Inc. It is undisputed that as part of the consideration for that sale, OSG agreed to pay $1,675,000 directly to the plaintiff, in exchange for the plaintiff assigning certain promissory notes to OSG. However, the defendant alleges that in exchange for the $1,675,000 paid on her behalf by OSG, the plaintiff was to assign all promissory notes, including the note at issue here. The plaintiff, meanwhile, alleges that he explicitly retained his rights in that one note. For the reasons that follow, the Court denies the motion for summary judgment.

Upon receiving part of the aforementioned payment from OSG, the plaintiff executed an assignment to OSG that stated in relevant part:

I, John M. Summers, (hereinafter referred to as "Assignor"), in consideration of the sum of One Million Six Hundred Seventy Five Thousand Dollars ($1,675,000) ... receipt of which is hereby acknowledged, assign all my rights, titles, collateral and interests in and to contracts entered into, whether express or implied, with ... Pamela. Hall Guss ... and any and all claims, demands, agreements, contracts, covenants, warranties, representations, actions, suits, causes of actions, obligations, controversies, debts, costs, expenses, accounts, charges, judgments, monies receivable of whatever kind in nature, in law, equity or otherwise, whether known or unknown which I had against ... Pamela Hall Guss, or may have had, now has, or can, shall or may have, ro or by any reason of any matter, cause or thing, whatsoever, whether now existing or hereafter arising, during, out of or in any way connected with any and all occurrences, transactions or other matters, including but not limited to, all transactions occurrences and obligations in any way arising out of or which were, or might, or could have been asserted, directly or indirectly, in connection with or arising out of any Purchase of Shares Agreement, Loan Agreement with Herramientas Metalicas de Corte, S.A. de C.V., Profesionals en Tratamiento de Metales, S.A. de C.V. and Corporacion Arrendadora de Maquinas para Produccion, S.A. de C.V., and any other agreements entered into between myself and Pamela Hall Guss to OSG Tap & Die, Inc. (hereinafter referred to as "Assignee")....

Based upon this assignment, the defendant argues that the plaintiff assigned any rights he had in the promissory note at issue to OSG, and therefore the plaintiff is not a real party in interest. Therefore, the defendant argues, she is entitled to summary judgment.

However, on the same day that the plaintiff signed the aforementioned assignment, and as part of the same set of documents to be given to OSG, he also signed a release to the defendant, releasing her from all manner of claims, but "specifically excepting a personal loan agreement entered into on the 4th day of May, 1991, for $125,000 on which the outstanding principal balance.is approximately $65,000." There is also further evidence in the record, including an affidavit from the plaintiff, which tends to show that the plaintiff did not intend to assign his interests in the note at issue to OSG. Michael Grantham,

the Vice President—Administration and Corporate Counsel of OSG Tap and Die, Inc., stated in an affidavit that prior to full payment of the $1,675,000 to the plaintiff and prior to the execution of the assignment and release, the plaintiff's attorney "asked for an exception in the Release which [the plaintiff's attorney] claimed was an unrelated transaction." OSG agreed to this exception at the time, even if it now claims it was misled. In a letter dated and faxed January 14, 1994, the plaintiff's attorney informed Mr. Grantham that he was enclosing the fully executed assignment agreement and releases which Mr. Grantham was to hold in escrow until OSG paid the plaintiff the balance due under their agreement. In a reply letter dated January 17, 1994, Mr. Grantham acknowledged receiving those documents. Therefore OSG had the release reserving the plaintiff's rights in the one promissory note before it paid the plaintiff the balance due under their agreement. Clearly, OSG was aware at the time that the plaintiff did not intend to release his rights in one $125,000 promissory note. The note at issue here was not delivered to OSG along with the other promissory notes, but was kept by the plaintiff. There is no indication that OSG ever specifically requested that the note at issue here be delivered to it until after this litigation was commenced.

▮ To determine whether the plaintiff assigned his rights to this note, the Court must examine the agreement between the plaintiff and OSG. This agreement consists not solely of the assignment, as the defendant argues, but rather of various documents including letters between the plaintiff and OSG, as well as the assignment and various releases. Because the documents are all part of the same underlying transaction, they must be read together. "New York law, which is applicable in this diversity action, requires that all writings that form part of a single transaction and are designed to effectuate the same purpose be read together, even though they were executed on different dates and were not all between the same parties." *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 263 (2d Cir.1965). It is clear that the terms of the assignment to OSG and the release to the defendant are in conflict,

and create an ambiguity. Where there is an ambiguity in an agreement, the Court may consider parol evidence to interpret the agreement. The affidavits submitted by the parties, along with the correspondence that was exchanged at the time of the agreement, raise material issues of fact with respect to whether the plaintiff has an interest in the promissory note at issue.

Fed.R.Civ.P. 56 states in relevant part that the Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." On a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir.1998). The Court must accept as true the allegations of the non-moving party, and should draw all factual inferences in favor of the non-moving party. *Id.* at 137–38. In the case at bar, the Court finds that there is sufficient evidence of ambiguity regarding the terms of the assignment as to raise a material issue of fact.

Accordingly, defendant's motion to dismiss and motion for summary judgment are hereby denied.

So ordered.